UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STERLING MERCHANT FINANCE LTD.,

Sterling,

v.

REPUBLIC OF CABO VERDE,

Respondent.

Civil Action No. 16-1285 (ESH)

## MEMORANDUM OPINION

Petitioner Sterling Merchant Finance Ltd. ("Sterling") brings this action against Respondent Republic of Cabo Verde ("Cabo Verde"), pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997 (the "New York Convention"), to confirm a foreign arbitral award. Before the Court is Sterling's motion for default judgment. (Mot. for Default Judgment, ECF No. 20.) For the reasons set forth herein, the Court will grant the motion and confirm the underlying arbitral award.

## BACKGROUND

Sterling is a limited liability company, organized in accordance with the laws of the State of Delaware and engaged in the business of investment banking, private equity, and international consulting.[1] (Pet. ¶ 11.) Cabo Verde is a foreign state, as defined in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*. (Pet. ¶ 12.) On or about October 30, 2006,

---

[1] Because Cabo Verde has not appeared in this action, the facts set forth herein are taken from Sterling's Petition to Confirm and the exhibits thereto.

Sterling and Cabo Verde entered into a contract, pursuant to which Cabo Verde agreed to pay Sterling $950,490.62 to manage Cabo Verde's airline and flag carrier, Transportes Aereos Cabo Verde ("TACV"), for a one-year period. (Pet. ¶¶ 13, 14 & Ex. B ("Management Contract").) On December 1, 2006, the management of TACV was transferred to Sterling. (Pet. ¶ 14.) Sterling fully performed all the services required under the Management Contract, the final act of which was the submission of a final report on November 30, 2008. (Pet. ¶ 15.) Cabo Verde, however, failed to pay Sterling all of the money that it was due, thereby breaching the Management Contract. (Pet. ¶ 15.)

Sterling attempted to collect the money it was owed or to reach a settlement. (Pet. ¶ 17.) On June 30, 2014, after those efforts were unsuccessful, it invoked the Management Contract's arbitration clause.[2] (Pet. ¶ 17.) On January 12, 2015, the matter was submitted to arbitration before a Sole Arbitrator, who was appointed by the Permanent Court of Arbitration, seated in the Hague in the Netherlands.[3] (Pet. ¶¶ 17-19 & Exs. C & D.) On November 27, 2015, the Sole Arbitrator issued his final decision, concluding that Cabo Verde had breached its obligations to Sterling under the Management Contract. (Pet. ¶ 20 & Ex. E ("Arbitral Award").) As relief, the Arbitral Award:

> 1. Orders the Republic of Cabo Verde to pay to Sterling Merchant Finance Ltd. an amount of USD 190,098.12 due under Invoice No. RBJ/pd/372;
>
> 2. Orders the Republic of Cabo Verde to pay to Sterling Merchant Finance Ltd. interest at a simple annual rate of 8% p.a. [per annum] on the amount stated in para. 273(1) *supra* [USD 190,098.12] from 29 January 2009 until full payment;

---

[2] The arbitration clause of the Management Contracts states that: "Any dispute, controversy, or claim arising out of or relating to this contract or the breach, termination, or invalidity thereof, shall be settled by arbitration, in accordance with the UNICITRAL Arbitration Rules as at present in force." (Pet. ¶ 17, Ex. B, at 18 (art. 7.2).)

[3] The Secretary-General of the PCA appointed Professor Juan Fernandez-Armesto as Sole Arbitrator. (Pet. ¶ 19 & Ex. D.)

> 3. Orders the Republic of Cabo Verde to pay to Sterling Merchant Finance Ltd. USD 7,616 and EUR 375 as arbitration costs;
>
> 4. Orders the Republic of Cabo Verde to pay to Sterling Merchant Finance Ltd. interest at a simple annual rate of 8% p.a. [per annum] on the amount stated in para. 273(3) *supra* [USD 7,616 and EUR 375] from the date of this award until full payment; and
>
> 5. Dismisses all other claims and prayers for relief.

(*See* Pet. ¶¶ 20-22 & Arbitral Award ¶ 273.) To date, Cabo Verde has not complied with the Arbitral Award.

On June 24, 2016, Sterling filed the pending petition to confirm the Arbitral Award. Because Cabo Verde is a foreign state, Sterling was required to effect service in accordance with the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1610. (*See* Order, Oct. 12, 2016, ECF No. 6.) On January 6, 2017, Sterling requested that the Clerk of the Court effect service, in accordance with 28 U.S.C. § 1608(a)(3),[4] by mailing a copy of the Petition, Summons, and Notice of Suit to Cabo Verde's Foreign Minister through a courier, DHL World Wide Express. (Affidavit Requesting Foreign Mailing, ECF No. 9.) The Clerk complied (*see* Certificate of Mailing, ECF No. 12), and Cabo Verde received the mailing on January 10, 2017. (*See* Return of Service, ECF No. 11.) Cabo Verde's response to the petition was due on March 11, 2017. (*Id*.) No response was filed. On April 28, 2017, Sterling requested that the Clerk

---

[4] Section 1608(a)(3) of the FSIA provides that a foreign state may be served:

> . . .
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned.
>
> . . .

28 U.S.C. § 1608(a).

enter a default against Cabo Verde (Aff. for Default, ECF No. 18), which the Clerk did on May 1, 2017. (Clerk's Entry of Default, ECF No. 19.) Sterling then filed the pending motion for default judgment.

## ANALYSIS

Sterling's motion for default judgment asks the Court to confirm the Arbitral Award and to enter judgment against Cabo Verde in accordance with its terms. Before granting a default judgment against a foreign state, the Court must satisfy itself that it has subject matter jurisdiction over the claims, personal jurisdiction over the defendant, and that "the claimant [has] establishe[d] his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e).

### I. JURISDICTION

#### A. Subject Matter Jurisdiction

As the bases for this Court's subject matter jurisdiction, Sterling relies on the New York Convention, chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208, and the FSIA.

The New York Convention is a treaty which addresses "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention, art. I(1). It provides that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." New York Convention, art. III. However, it allows a Contracting State at the time it becomes a signatory to the Convention to insist on reciprocity – to "declare that it will apply the Convention to the recognition and enforcement of awards made only in the territory of another Contracting State." New York Convention, art. I(3). With that reservation, the United States became a

4

signatory to the Convention in 1970, *see* 21 U.S.T. 2566, and Congress enacted implementing legislation later that year, giving the federal district courts jurisdiction to enforce its provisions. *See* 9 U.S.C. §§ 201-208; *id*. § 201 ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter."); *id*. § 203 ("An action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.") Under the FSIA, a foreign state is presumptively immune from the jurisdiction of United States courts. *See* 28 U.S.C. § 1604.[5] However, the FSIA excepts from that immunity actions against a foreign state to confirm certain arbitral awards, including awards governed by the New York Convention. *See* 28 U.S.C. § 1605(a)(6)(B);[6] *Creighton Ltd*., 181 F.3d at 123–24 ("New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception." (internal quotations omitted)). Thus, based on the New York Convention, the Federal Arbitration Act, and the FSIA, this Court has subject matter jurisdiction over Sterling's petition to confirm the Arbitral Award against Cabo Verde as long as (1) the award "fall[s] under" the New York Convention; and (2) it was issued in the territory of a Contracting State.

---

[5] Section 1604 states: "Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."

[6] Section 1605(a)(6)(B), in relevant part, states: "(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . (6) in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards."

Both these requirements are satisfied here. An arbitral award "falls under" the Convention if it "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial . . . ." 9 U.S.C. § 202. Here, the Arbitral Award meets this definition as it arises out of a commercial contractual relationship between Sterling and Cabo Verde for the management of Cabo Verde's airline and flag carrier. (*See* Arbitral Award at 18-27.) In addition, the Arbitral Award was also issued in the territory of a Contracting State – the Netherlands. (*See* Arbitral Award at 63.)[7] Accordingly, the Court concludes that it has subject matter jurisdiction over Sterling's petition to enforce the Arbitral Award against Cabo Verde.

B.  **Personal Jurisdiction**

The FSIA "specifies that personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject-matter] jurisdiction . . . where service has been made under § 1608." *GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012) (citing 28 U.S.C. § 1330(b)). In other words, "'under the FSIA, subject matter jurisdiction plus service of process equals personal jurisdiction.'" *Id.* (quoting *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987)). Here, the Court has concluded that it has subject matter jurisdiction, *see supra* § I.A., and the record establishes that Sterling served Cabo Verde in accordance with § 1608(a)(3). (*See* Certificate of Mailing; Return of Service.) Accordingly, the Court has personal jurisdiction over Cabo Verde.

II. **CONFIRMATION OF ARBITRAL AWARD BY DEFAULT JUDGMENT**

Before entering a default judgment against a foreign state, the Court must conclude that "the claimant [has] establishe[d] his claim or right to relief by evidence satisfactory to the court."

---

[7] A complete list of Contracting States can be found at http://www.newyorkconvention.org/countries.

28 U.S.C. § 1608(e); *see Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 838 (D.C. Cir. 2009) (the FSIA "does not automatically entitle a plaintiff to judgment when a foreign state defaults" (quoting *Roeder v. Islamic Republic of Iran,* 333 F.3d 228, 232 (D.C. Cir. 2003)). Sterling has met this standard.

Under the New York Convention and the Federal Arbitration Act, the recipient of a foreign arbitral award is authorized to seek an order in federal court "confirming the award as against any party to the arbitration" and, upon receipt of such a petition, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in said Convention." 9 U.S.C. § 207. A district court is "afford[ed] . . . little discretion in refusing or deferring enforcement of foreign arbitral awards: the Convention is 'clear' that a court 'may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.'" *Belize Soc. Dev., Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007)).

Article V(1) of the New York Convention provides five grounds on which a Court can deny confirmation of an arbitral award, "at the request of the party against whom it is invoked":

> (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present its case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . or

> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention, art. V. The party resisting confirmation "bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies." *Gold Reserve, Inc. v. Bolivarian Repub. of Venezuela*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015).

Given Cabo Verde's default status in this case, it obviously has not put forth any arguments against confirmation. In addition, the Court's own review of the record leads it to the conclusion that that none of the grounds for refusing to confirm Sterling's arbitral award exist here. There is no suggestion of "incapacity of the parties; invalidity of the underlying agreement; an award beyond the scope of the arbitration agreement; improper composition of the arbitral panel; and an award that has not yet become binding, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." *See G.E. Transp. S.p.A. v. Republic of Albania*, 693 F. Supp. 2d (D.D.C. 2010).

Article V(2) provides two additional grounds for denying recognition of an arbitral award, whether the respondent asserts them or not:

> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of [the country where enforcement is sought]; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, art. V(2). Here, the underlying dispute is an alleged "breach of contract, which is surely capable of settlement by arbitration in the United States." *Africard*, 210 F. Supp.

3d at 127-28. Nor does the Court see any reason why enforcement of the award would be contrary to public policy.

Accordingly, the Court finds that Sterling is entitled to confirmation of its arbitral award and a corresponding judgment against Cabo Verde.

## CONCLUSION

For the foregoing reasons, Sterling's Petition to Confirm Foreign Arbitral Award and for Default Judgment will be granted. A separate Order accompanies this Memorandum Opinion.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   June 13, 2017